UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――

THE AMERICAN INSURANCE COMPANY,

                                Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    10-CV-834-A

CITY OF JAMESTOWN,

                                Defendant.

―――――――――――――――――――――――――

        This action is brought by an insurance company to recover approximately

$392,000 it paid to an insured for property damage allegedly caused by municipal

negligence.  On August 9, 2009, a drainage culvert in Jamestown, New York,

became clogged with tree limbs and branches during very heavy rain.  Storm water

backed up and flooded part of a hospital.  The plaintiff, The American Insurance

Company ("AIC"), paid the hospital for the flood damage.

        Plaintiff AIC alleges that the defendant, the City of Jamestown, caused the

flood damage to the hospital by failing to inspect and maintain the drainage culvert.

Plaintiff brings the action as subrogee under the hospital's insurance policy to

recover from Jamestown the $392,000 insurance payment to the hospital.

## BACKGROUND

        The Court has subject-matter jurisdiction due to diversity of citizenship of the

parties.  28 U.S.C. § 1332(a).  The action is before the Court for review of a Report

and Recommendation (the "R&R") by Magistrate Judge Hugh B. Scott on a motion

for summary judgment by defendant Jamestown pursuant to Rule 56(a) of the

Federal Rules of Civil Procedure.  The R&R recommended that the Court grant summary judgment to Jamestown on the ground that plaintiff AIC lacks sufficient evidence to establish that Jamestown was negligent.  Pre-trial discovery is complete.  For the reasons that follow, on findings different from those in the R&R, the Court adopts the recommendation of the R&R and grants summary judgment to Jamestown.

The Court finds that a provision of the City of Jamestown Charter required Jamestown to have been given prior written notice of a  "defective, out-of-repair,  . . . or obstructed condition" of the drainage culvert that caused the flooding at the hospital before a negligence cause of action could be maintained against Jamestown.  Charter, § C-68.  Because Jamestown was not given the required notice, it did not owe a legally recognized duty of care with respect to a defective, out-of-repair, or obstructed culvert and plaintiff AIC's negligence claim is unsustainable as a matter of law.

Even if the prior notification requirement in the Jamestown Charter does not bar plaintiff AIC's negligence claim, plaintiff lacks sufficient evidence to establish Jamestown was aware, or constructively aware, of the dangerous or obstructed condition of the drainage culvert before the culvert became clogged on August 9, 2009.  Without this showing, plaintiff is unable to satisfy a threshold legal requirement that Jamestown owed the hospital a duty of care with respect to the culvert.  The Court therefore grants summary judgment to Jamestown on plaintiff AIC's negligence claim.

2

**FACTS**

From August 8th through August 10th, 2009, heavy rains fell during storms over the City of Jamestown, New York.  Flooding and other storm-related damage was so severe that Jamestown received disaster-relief assistance from the Federal Emergency Management Agency and the New York State Emergency Management Office.

During these storms, on Sunday, August 9th, a drainage culvert located near the intersection of Camp Street and West Virginia Boulevard in Jamestown (the "Camp Street culvert") became clogged primarily with tree limbs and branches during a heavy downpour of rain.  Storm water backed up at the mouth of the culvert and flowed down nearby streets and into the parking lot and emergency department of The Women's Christian Hospital Association (the "WCA Hospital") approximately 1,500 feet away.  The WCA Hospital, which is situated in a low-lying area, suffered property damage because of the clog and flooding.  The plaintiff, The American Insurance Company, paid the hospital more than $392,000 under the hospital's insurance policy for the damage.

The Camp Street culvert, in which the clog occurred, begins with a semi-circular stone arch at the mouth of the culvert on the south side of Camp Street.  Before the arch, to the south, a small stream known as Minnow Creek flows into the mouth of the culvert through a wooded draw.  Minnow Creek is fed by several offshoots upstream from the culvert.

The Camp Street culvert was rebuilt by Jamestown in 2007.  Inside the mouth

3

of the culvert, a concrete chamber catches runoff and storm water.  Twin thirty-six inch diameter corrugated plastic pipes drain from the concrete chamber, side-by-side, under Camp Street, to another concrete chamber where the culvert feeds into one of four main branches of Jamestown's storm water drainage system.  That branch of the drainage system continues underground, generally north of Camp Street, until it discharges into the Chadakoin River, which is north of the WCA Hospital.  The culvert is accessible by manhole.

The August 9, 2009 clog of the Camp Street culvert extended roughly 100 feet inside the mouth of the culvert at Minnow Creek.  Before the August 9, 2009 clog and flooding, Jamestown had not been given written notice of an obstruction or of clogging of the culvert, or of any condition that could cause the culvert to become obstructed or clogged.

Before the August 9, 2009 clog and flooding, Jamestown's practice was to check its storm water drainage system for blockages and potential blockages from time to time.  These inspections were incidental to other work on the drainage system, in response to citizen complaints, or the work of a stand-by cleaning crew that would rotate though Jamestown cleaning the entire system, including catch basins.  Jamestown had no written policy for the frequency of inspections, or the scope of the inspections, but the practice was for the cleaning crew to use a flusher truck and rods to clean approximately one quarter of the entire system annually.

Jamestown kept no records of the inspections and cleaning work on the drainage system.  Dates of the work, locations of the work, and conditions found in

4

the drainage system were not documented.  Locations in the drainage system that had problems in the past were given more attention, but no documentation shows where, when and how these problems occurred and how they were addressed by Jamestown.

There had been some prior flooding at or near the WCA Hospital.  There had been other occasions when Jamestown's storm water drainage system clogged in other parts of Jamestown, and Jamestown had studied other parts of the system to address those problems.

There had been no other occasions when the Camp Street culvert had clogged or been found to be even partially clogged.  No witnesses or documents have been located showing any prior clogging or even a debris-collection problem at or in this culvert.

The Jamestown Streets and Sewer Supervisor testified during pretrial discovery that he lives not far from the Camp Street culvert and would sometimes drive over it on his way to and from work in the years before the clog and flooding on August 9, 2009.  The Supervisor recalled he had personally checked under the manhole cover at the spot where the culvert clogged to see how water was flowing through the twin, 36-inch diameter pipes in the culvert under Camp Street.  He was unable to recall how many times he had checked the water flow through the culvert before the clog and flooding.  He did not recall whether the mouth of the culvert at the arch headwall of the culvert where Minnow Creek feeds into the culvert had ever been visually inspected.

5

After the August 9, 2009 clog of the Camp Street culvert and flooding,

Jamestown sought permission from the New York State Department of

Environmental Conservation (the "DEC") to install a debris-collection gate across the

eight- to ten-foot width of Minnow Creek at the mouth of the culvert to stop large tree

limbs and branches from entering the culvert during heavy runoff.  October 9, 2009

correspondence sent by Jamestown to the DEC for this purpose stated:

> The concrete chamber on the South side of Camp Street
> periodically traps organic debris, thus causing a water
> backup or surcharge where Minnow Brook enters the arch
> culvert, . . . .

Despite the letter, no witness remembers any part of the culvert trapping organic or

other debris any time prior to the August 9, 2009 clog and flooding.  The reference in

the letter to  "periodically traps organic debris . . . causing a water backup"  was

prompted by the August 9, 2009 clog and flooding.

## DISCUSSION

**I.  <u>The Report and Recommendation.</u>**  The standard of review of a

Magistrate Judge's report and recommendation is *de novo* for any findings to which

a party specifically objects.  Fed. R. Civ. P. 72(b); *see United States v. Male*

*Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  The Court reviews unobjected-to findings

for clear error.  *Charvenko v. Barbera,* 2011 WL 1659882 at *1 (W.D.N.Y. May 3,

2011).

Pursuant to these standards of review, the Court finds that Jamestown did not

owe the WCA Hospital a duty of care with respect to the condition of the Camp

Street culvert when the flooding occurred.  The Court adopts the conclusion of the R&R to grant summary judgment to Jamestown, but not for the reasons stated in the R&R.

The R&R first recommended that the Court deny summary judgment to Jamestown based upon Jamestown's argument that the negligence claim of plaintiff AIC may not be maintained since Jamestown had not been given prior written notification as required by § C-68 of the Jamestown Charter of a defective, out-of-repair, or obstructed condition of the culvert that became clogged.  The R&R found that the prior notification requirement could not be applied on summary judgment before a jury decides a foreseeability question.  The Court finds that reasoning clearly erroneous because Jamestown's prior notification requirement bars plaintiff's negligence claim without regard to foreseeability of harm.

On a different ground, the R&R recommended that Jamestown's motion for summary judgment be granted.  The R&R found that a municipality is not liable under New York law for negligent inspection and maintenance of a storm water drainage culvert that becomes clogged unless the municipality was actually aware of a clogging problem with the culvert.  The R&R concluded plaintiff AIC lacks enough evidence Jamestown was aware of a clogging problem to prove that Jamestown negligently failed to inspect and maintain the culvert.  The Court rejects that reasoning on de novo review because New York law requires either actual knowledge or constructive knowledge of a potential clogging problem with the culvert.  The Court nevertheless concludes, because Jamestown had neither actual

7

knowledge or constructive knowledge of a potential clogging problem with the

culvert, that Jamestown is not be liable to the hospital or its subrogee and that

summary judgment should be entered against plaintiff.

II. **The Standard for Summary Judgment.**   Summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure:

> is properly regarded not as a disfavored procedural shortcut,
> but rather . . . must be construed with due regard not only for
> the rights of persons asserting claims and defenses that are
> adequately based in fact to have those claims and defenses
> tried to a jury, but also for the rights of persons opposing
> such claims and defenses to demonstrate . . . , prior to trial,
> that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).   Summary judgment pursuant to

Rule 56 is warranted if  "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see* Fed.

R. Civ. P. 56(c).  It should be entered  "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof."  *Celotex Corp. v. Catrett,* 477 U.S.

at 322; *Rieseck v. Universal Communications of Miami, Inc.,* 591 F.3d 101, 104 (2d

Cir. 2010).

The analysis that follows begins with an overview of applicable negligence

law, including the law of a municipality's duties of care with respect to storm water

runoff.  Because the action is pending on diversity jurisdiction, 28 U.S.C. § 1332(a),

state substantive law applies.  *Gasperini v. Center for Humanities, Inc.*, 518 U.S.

415, 427 (1996).  New York law applicable to a negligence cause of action therefore

determines which factual issues are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The Court then addresses whether Jamestown owed the WCA Hospital a duty of care with respect to the condition of the Camp Street culvert when the flooding occurred on August 9, 2009.  Because the Court is assessing the evidence on defendant Jamestown's motion for summary judgment, the Court does not weigh the evidence and instead draws all reasonable inferences relevant to material facts in favor of the nonmoving party, plaintiff AIC.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255.  To defeat Jamestown's motion for summary judgment, plaintiff must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus, Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

**III.  <u>Applicable Negligence Law.</u>**  Because the Court is sitting in diversity, it applies settled New York law as it has been interpreted by New York courts and is required to "carefully predict" how New York Courts would rule on any uncertain substantive-law questions.  *Runner v. N.Y. Stock Exch., Inc.,* 568 F.3d 383, 386 (2d Cir. 2009) (*quoting The Travelers Ins. Co. v. Carpenter,* 411 F.3d 323, 329 (2d Cir. 2005)).  The action involves primarily well-settled questions of New York law.

The New York negligence cause of action plaintiff AIC alleges against Jamestown has three elements:  "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon ex rel*

*Solomon v. City of New York,* 66 N.Y. 1026, 1027 (1985); *see e.g., Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (*quoting Solomon, supra,*); *DiBenedetto v. Pan Am World Service, Inc.,* 359 F.3d 627, 630 (2d Cir. 2004) (*same*).  If the plaintiff's evidence is insufficient as a matter of law to carry the plaintiff's burden of proof on even one of the three elements of the negligence cause of action by a preponderance of the admissible evidence, summary judgment must be entered against the plaintiff.  Fed. R. Civ. P. 56(a), (e); *see e.g., Rothstein v. City of New York,* 2011 WL 3273473 (S.D.N.Y. July 29, 2011).

A.  **Duty of Care.**  The first element of a negligence cause of action — that a defendant owes a duty of care to the plaintiff — involves a threshold legal inquiry. *Gilson v. Metropolitan Opera*, 5 N.Y.3d 574, 576-77 (2005); *Guest v. Holka,* 603 F.3d 15, 21 (2d Cir. 2010).  "The threshold question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff?"  *Hamilton v. Beretta U.S.A. Corp.,* 96 N.Y.2d 222, 232 (2001).  Both  "[t]he existence and scope of an alleged tortfeasor's duty [are], in the first instance,  . . . legal question[s] for determination by the courts."  *Sanchez v. State of New York,* 99 N.Y.2d 247, 252 (2002) (*internal citation omitted*); *DiPonzio v. Riordan,* 89 N.Y.2d 578, 583 (1997); *DiBenedetto,* 359 F.3d *at* 630.  As the New York Court of Appeals has stated:

> [a] finding of negligence may be based only upon the breach of a duty. . . .  Although juries determine whether and to what extent a particular duty was breached, it is for the courts first to determine whether any duty exists.

*Darby v. Compagnie Nat'l Air France,*  96 N.Y. 2d 343, 347 (2001).

10

**B.  Municipal Duties Regarding Storm Water.**  In general, a municipality in New York owes no common law duty of care to control surface water runoff, to keep streams free of obstructions, or to provide flood protection.  *See e.g., O'Donnell v. City of Syracuse,* 184 N.Y. 1, 10-11 (1906); *Cashin v. City of New Rochelle,* 256 N.Y. 190, 195 (1931); *Office Park Corp. v. County of Onondaga,* 64 A.D.2d 252, 258 (4th Dep't 1978).  If a municipality builds a storm water drainage system or sewer, it is ordinarily immune from liability if the drainage system is inadequate.  *See Seifert v. Brooklyn,* 101 N.Y. 136, 145-46 (1886);  *Carbonaro v. Town of North Hempstead,* 97 A.D.3d 624 (2d Dep't 2012); *but see, Klebe v. Tri-Municipal Sewer Com'n,* 160 A.D.2d 677, 679 (2d Dep't 1990) (municipal immunity for an exercise of policy or operational judgment is ordinarily qualified immunity).

If the municipality learns of an inadequacy in its storm water drainage system, it may be legally-bound to exercise reasonable care timely to address the inadequacy, however.  *Seifert v. Brooklyn, supra.*  A municipality may also face liability where a drainage system is negligently constructed, *Smith v. City of New York*, 66 N.Y. 295, 296 (1876), or where the municipality breaches the duty to "exercise . . . a reasonable degree of watchfulness"  in the inspection and maintenance of a drainage system.  *McCarthy v. City of Syracuse,* 46 N.Y. 194, 198 (1871); *Fireman's Fund Ins. Co. v. County of Nassau,* 66 A.D.3d 823, 824 (2d Dep't 2009).  Plaintiff AIC's negligence claim and objections to the R&R are premised upon Jamestown breaching a duty of watchfulness over the Camp Street culvert as part of its storm water drainage system.

**C.  Limitations of Municipal Duties Regarding Storm Water.**  As is stated

above, the scope of the duty of care in New York is initially a question of law for the

Court.  *Palka,* 83 N.Y.2d at 585 (1994); *Eaves Brooks Costume Co. v. W.B.H. Realty

Corp.,* 76 N.Y.2d 220, 226-27 (1990).  New York courts generally determine a

common law duty of care:

> by balancing factors, including the reasonable expectations
> of parties and society generally, the proliferation of claims,
> the likelihood of unlimited or insurer-like liability,
> disproportionate risk and reparation allocation, and public
> policies affecting the expansion or limitation of new channels
> of liability.

*Palka v. Servicemaster Mgt. Servs. Corp.,* 83 N.Y.2d *at* 586 (*quoted in 532 Madison

Ave. Gourmet Foods, Inc. v. Finlandia Center, Inc.* 96 N.Y.2d 280, 288-89 (2001)

(*citing Hamilton v. Beretta U.S.A. Corp.,* 96 N.Y.2d 222, 232 (2001)).

In this context, the concept of  "foreseeability bears on the scope of a duty [of

care], not whether a duty exists in the first place."  *Holdampf v. AC&S, Inc.* 5 N.Y.3d

486, 494 (2005).  "[F]oreseeability of harm does not define duty.  Absent a duty

running directly to the injured person there can be no liability in damages, however

careless the conduct or foreseeable the harm . . . ."  *532 Madison Ave. Gourmet

Foods, Inc. v. Finlandia Center, Inc.,* 96 N.Y.2d at 289 (*citation omitted*).  Since there

common law precedent and legislation control the issues posed by Jamestown's

motion for summary judgment, the Court need not undertake a complex balancing of

the many factors that related to Jamestown's duty of care with respect to the Camp

Street culvert on August 9, 2009.

1.  **Legislative limits on the duty of care.**  The New York legislature, in N.Y.

Gen. Mun. Law § 50-e(4), has clarified the authority of municipalities to limit their

duty of care in derogation of the common law by specifically allowing municipalities

to require prior written notice of certain potential problems.  *See generally, Gorman*

*v. Town of Huntington,* 12 N.Y.3d 275, 294 (2009) (*quoting Poirier v. City of*

*Schenectady,* 85 N.Y.2d 310, 313 (1995)); *Barry v. Niagara Frontier Transportation*

*Authority*, 35 N.Y.2d 629, 633 (1974).  A municipality is authorized by § 50-e(4) to

adopt a local law or charter provision requiring that the municipality be given prior

written notice of a dangerous or obstructed condition and a reasonable amount of

time to address the condition before the municipality will incur liability for negligent

malfeasance.  *Poirier v. City of Schenectady*, 85 N.Y.2d 310, 313 (1995); *Amabile v.*

*City of Buffalo,* 93 N.Y.2d 471, 473 (1999) ("Prior notification laws are a valid

exercise of legislative authority."); *see White v. Village of Hempstead,* 13 Misc.3d

471, 467-68 (Sup. Ct. Nassau Co. 2006) (N.Y. Const. Art. IX, § 2(c) *and* N.Y. Mun.

Home Rule Law § 10 authorize municipalities to adopt prior notification

requirements).

New York General Municipal Law § 50-e(4) specifies six locations that may be

covered by a prior notification requirement of a dangerous or obstructed condition:

> No other or further notice [except a notice of claim] . . . shall
> be required as a condition to commencement of an action
> . . . provided, however, that nothing herein shall be deemed
> to dispense with the requirement of notice of the defective,
> unsafe, dangerous or obstructed condition of any street,
> highway, bridge, culvert, sidewalk or crosswalk, or of the
> existence of snow or ice thereon, where such notice now is,

> or hereafter may be, required by law, as a condition
> precedent to liability for damages or injuries to person or
> property alleged to have been caused by such condition,
> and the failure or negligence to repair or remove the same
> after the receipt of such notice.

*Id.; Town of Hempstead v. Walker*, 84 N.Y.2d 360 (1994).  Only the six locations in

N.Y. Gen. Mun. Law § 50-e(4) — which include culverts — may be the subject of a

prior notification requirement in a local law or charter provision.  *Id.*; *Poirier v. City of*

*Schenectady,* 85 N.Y.2d at 313.

      Because prior notification requirements limit common law duties of care, they

are read strictly.  *Gorman v. Town of Huntington,* 12 N.Y.3d 275 (2009).  For

example, a municipal prior notification requirement is not necessarily satisfied even

if the municipality has constructive notice of a dangerous or obstructed condition of a

storm water drainage system.  *See Amabile v. City of Buffalo,* 93 N.Y.2d 471, 475-

76 (1999) (constructive notice is insufficient).  Even when a municipality actually

receives prior written notice, if the notice is received by the wrong office of the

municipality, it may be insufficient.  *Gorman,* 12 N.Y.3d at 294-95 (2009) (written

notice to the municipality, but not to the municipality's specific designee in the prior

notification law, was insufficient); *Schaal v. City of Utica,* 6 A.D.3d 1070 (4th Dep't

2004).  Prior written notice need not have been given by a party to the negligence

action or by any particular person to be sufficient.

      There are two exceptions to New York municipal prior notification laws.  First,

if a municipality created a dangerous or obstructed condition by an act of affirmative

negligence, it may not avoid liability by requiring compliance with a legislative prior

14

notification requirement.  *Amabile v. City of Buffalo,* 93 N.Y.2d at 474; *Poirier v. City of Schenectady,* 85 N.Y.2d at 314-15.  Affirmative negligence usually requires an act that  "immediately results in a dangerous [or obstructed] condition."  *Obler v. City of New York,* 8 N.Y.3d 888, 889 (2007) *(quoted  in San Marco v. Village/Town of Mt. Kisco,* 16 N.Y.3d 111, 116 (2010)).  A reasonably watchful municipality recognizes its own actions that immediately result in danger or a risk of obstruction and is duty bound to take reasonable steps to avert the danger or risk, even in the absence of compliance with a prior written notice requirement.  *Id.*  A municipality's passive negligence is insufficient to satisfy this exception to a prior notification requirement. *Monteleone v. Inc. Vil. of  Floral Park,* 74 N.Y.2d 917, 919 (1989).

Second, a municipal prior notification requirement will not apply where a dangerous or obstructed condition was created by a municipality's special use of property.  *Amabile v. City of Buffalo*, 93 N.Y.2d at 474.  The special use must confer a special benefit upon the municipality.  *Oboler v. City of New York,* 8 N.Y.3d at 890. For example, a missing manhole cover on a street may be within the special use exception of a prior notification requirement.  *See Ocasio v City of Middletown,* 148 A.D.2d 431, 432 (1st Dep't 1989).

   **2.  Legislative Limit on Jamestown's  Duty of Care to the WCA Hospital.**

New York law imposes a duty upon Jamestown to exercise a reasonable degree of watchfulness over its storm water drainage system sufficient to protect others from unreasonable risk of injury.  That was Jamestown's duty of care long before the flooding in August of 2009, and that is Jamestown's duty now.  *See e.g., Carbonaro*

15

*v. Town of North Hempstead,* 97 A.D.3d 624 (2d Dep't 2012).  It is undisputed that

the August 9, 2009 flooding in Jamestown caused by the clog in the Camp Street

culvert was a substantial factor in bringing about significant property damage to the

WCA Hospital.  However,  "[p]roof of negligence in the air, so to speak, will not do"

to trigger negligence liability.  *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 341

(1928) (*quotation omitted*).  "Without a duty running directly to the injured person

there can be no liability in damages, however careless the conduct or foreseeable

the harm."  *Lauer v. City of New York,* 95 N.Y.2d 95, 100 (2000).  "In the absence of

duty, there is no breach and without a breach there is no liability."  *Pulka v.*

*Edelman,* 40 N.Y.2d 781, 782 (1976).

The prior notification requirement in § C-68 of Jamestown's Charter provides

as follows:

> No civil action shall be maintained against the City for
> damages or injuries to person or property sustained in
> consequence of any public street or highway or public place,
> land or building, including but not limited to any bridge,
> culvert, sidewalk, crosswalk, grading, opening, drain, sewer,
> park, or playground or equipment located herein or thereon
> being in a defective, out-of-repair, unsafe, dangerous, or
> obstructed condition, unless it appears that prior to the
> occurrence resulting in such damages or injuries written
> notice of the existence of such condition relating to the
> particular place or equipment was actually given to the City
> Clerk and filed in his/her office and that there was a failure
> or neglect within a reasonable time after receipt of such
> notice to repair, remedy, or remove the condition complained
> of.

*Id.*  Accordingly, no negligence cause of action to recover for property damage may be

maintained against Jamestown for a defective, out-of-repair, or obstructed culvert

16

unless the City Clerk has been given written notice of the condition a sufficient period of time before damage occurs to have allowed Jamestown a reasonable chance to remedy the condition.  *Id.*

The purpose and policy behind § C-68 of Jamestown's Charter is to limit the scope of Jamestown's duty of care.  *See Gorman v. Town of Huntington,* 12 N.Y.3d 275, 279 (2009).  Section C-68 means that the obligation that Jamestown owed to the WCA Hospital with respect to the Camp Street culvert, at the time the culvert became clogged on August 9, 2009 and storm water flooded the WCA Hospital, was a legally-contingent obligation:  Jamestown would *only* have had a legally recognized duty of care to have repaired any defect in the culvert, or to have cleared any obstruction or potential obstruction of the culvert, within a reasonable time after specific written notice of the defect or the potentially obstructed condition of the culvert had been given to the City Clerk.  Charter, § C-68; *see e.g., DelCamp v. Village of Brocton,* 270 A.D.2d 842 (4th Dep't 2000).

Plaintiff AIC concedes that no prior written notice as required by § C-68 of the Jamestown Charter of the condition of the Camp Street culvert was ever given to the City Clerk of Jamestown.  Without such notice, Jamestown had no legally recognized duty of care to the WCA Hospital with respect to a defective, out-of-repair, or obstructed condition of the Camp Street culvert.  *Gorman,* 12 N.Y.3d 275, 279.  Because Jamestown did not owe the hospital that legally recognized duty of care, the negligence claim of plaintiff against Jamestown for the flood damage to the hospital is unsustainable and Jamestown is entitled to summary judgment.

17

Plaintiff AIC argued below that Jamestown waived the protection of the prior notification requirement in § C-68 of the Charter by failing to allege it explicitly enough as an affirmative defense in its pleadings.  However, under New York law, municipal prior notification requirements are:

> a condition precedent which [a] plaintiff is required to plead and prove to maintain an action against a [the municipal defendant].

*Katz v. City of New York*, 87 N.Y.2d 241, 243 (1995) (*citations omitted*); *see e.g.,* 1B Hon. Leon D. Lazer, et al., *New York Pattern Jury Instructions – Civil* § 2:225A (3rd ed. 2012).  As a condition precedent to maintaining a negligence action upon which plaintiff had the burden of proof, the prior notification requirement in § C-68 of the Charter is not an affirmative defense.  *Katz v. City of New York*, 87 N.Y.2d *at* 243.[1]

In a similar case, the Village of Brocton, New York, won dismissal at the pleading stage of a negligence claim against the Village for flood damage caused by a culvert that was clogged by a log because the plaintiff had not alleged and could not carry its burden of proof that the Village's prior notification law had been satisfied.  *DelCamp v. Village of Brocton,* 270 A.D.2d 842 (4th Dep't 2000).  The plaintiff alleged a Village highway superintendent had actual knowledge of a log obstructing the culvert and had enough time to prevent the residential flooding

---

[1] Because the Court's subject-matter jurisdiction is diversity of citizenship, state law determines whether a claim is an affirmative defense. *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1540-41 (2d Cir.1997); *see also United States v. McCombs,* 30 F.3d 310, 323-24 (2d Cir. 1994) ("Presumptions and other matters related to the burden of proof are considered matters of substantive law, governed by the law of the jurisdiction whose substantive law applies to the merits of the question in issue." *Id.*)

damage suffered by the plaintiff.  Actual knowledge of the obstruction that caused the flooding damage did not save the plaintiff's negligence claim from dismissal for failure to plead and prove satisfaction of the Village's prior notification requirement. *Id.*

On the same reasoning, because Jamestown did not receive written notice satisfying Jamestown Charter § C-68 concerning a dangerous or obstructed condition of the Camp Street culvert prior to the flood damage suffered by the WCA Hospital on August 9, 2009, plaintiff AIC has no negligence cause of action against Jamestown.  It was clear error for the R&R to find that a material question of fact regarding foreseeability of flood damage to the WCA Hospital should preclude entry of summary judgment on this ground.  "[F]oreseeability bears on the scope of a duty, not whether a duty exists in the first place."  *Holdampf v. AC&S, Inc.,* 5 N.Y.3d 486, 494 (2005); *see* 1A Hon. Leon D. Lazer, et al., *New York Pattern Jury Instructions – Civil* § 2:12, p.233 (3rd ed. 2012) ("Unlike foreseeability and causation, the existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the courts, . . . [*citations omitted*].")  The legislative limit on Jamestown's duty of care in § C-68 of the Jamestown Charter made foreseeability immaterial to the threshold legal issue of whether a duty existed.[2]

Plaintiff AIC also argued below, in the alternative, that its negligence claim

---

[2]  Unfortunately, neither party brought the *Village of Brocton* case to the attention of the Court.  Jamestown could have prevailed on a simple motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  Plaintiff AIC, since its business is underwriting casualty risk, could have cut its losses.

was not barred by § C-68 of the Jamestown Charter because the claim was within

the affirmative-negligence exception to prior notification laws. *Compare San Marco*

*v. Village/Town of Mount Kisco,* 16 N.Y.3d 111 (2010) (a fact question whether

municipal snow-removal efforts caused black ice to form, upon which a pedestrian

fell and was hurt, precluded summary judgment based upon a lack of compliance

with a prior notification requirement), *with Horan v. Town of Tonawanda,* 83 A.D.3d

1565, 1566-67 (4th Dep't 2011) (affirmative-negligence exception does not apply to

conditions that develop over time).

However, plaintiff AIC has no evidence Jamestown took an affirmative step

that caused the clog of the Camp Street culvert when the WCA Hospital was flooded

on August 9, 2009.  Plaintiff insists it is entitled to a jury trial to contend that the clog

of the Camp Street culvert occurred because Jamestown was not conducting

frequent, scheduled inspections of the culvert for debris that might have been

collecting in or at the mouth of the culvert and that Jamestown was, by failing to act,

a substantial factor in bringing about the clog that caused the flood damage to the

hospital.  This alleged failure of watchfulness over the culvert would be passive

malfeasance, not evidence of an affirmative act of negligence.

More specifically, plaintiff AIC has no evidence even suggesting Jamestown

did something that a reasonably watchful municipality would recognize more or less

immediately resulted in danger or a risk of obstruction of the culvert that reasonable

steps would avert.  Plaintiff has no evidence upon which a reasonable jury could rely

to find that Jamestown engaged in a particular activity, or performed specific acts,

that caused the tree limbs and branches to clog the Camp Street culvert and that

was a substantial factor in bringing about the August 9, 2009 flood damage to the

WCA Hospital.  The affirmative-negligence exception to the prior notification

requirement in Charter § C-68 is inapplicable and does not save plaintiff's

negligence claim.

Plaintiff AIC also argued below that the affirmative-negligence exception to

the prior notification requirement applies because Jamestown built and

reconstructed the Camp Street culvert.  Negligent design at some time in the past is

hardly an act of affirmative negligence under applicable New York law and prior

notification pursuant to Charter § C-68 would be required of a specific defect — such

as failure to install a debris-collection gate at the mouth of the culvert, for example —-

to potentially give rise to a duty of care running from Jamestown to the WCA

Hospital.  Because Jamestown was not given the prior written notification of any

defect in the Camp Street culvert required by § C-68 of its Charter, plaintiff has no

negligence cause of action and the Court grants summary judgment to Jamestown.

**3.  Common law limits on the duty of care.**[3]  In the absence of a prior

written notification requirement, a municipality must still be aware or constructively

aware of a dangerous or obstructed condition of a storm water drainage system

before the municipality will incur negligence liability for breaching a duty of care to

---

[3]  This overview of the common law limits on the municipal duty of care regarding storm water drainage systems assumes that no legislative prior notification limit is applicable.  It also assumes that conditions of which a municipality has constructive knowledge are legally equivalent to conditions of which a municipality reasonably should be aware.  *See Harris v. Village of East Hills,* 41 N.Y.2d 446, 449-50 (1977).

maintain the system.  *See generally,* 1B Hon. Leon D. Lazer, et al., *New York Pattern Jury Instructions – Civil* § 2:225 (3rd ed. 2012) (pattern jury instruction for municipal subsurface structures).  The requirement of actual or constructive knowledge of a danger or obstruction before negligence liability will attach serves to limit municipalities' common law duty of care to conditions that municipalities reasonably may be able to fix or otherwise address; New York municipalities are not insurers against all casualty losses.  *See e.g., Azizi v. Village of Croton-on-Hudson,* 79 A.D.2d 953, 954-55 (2d Dep't 2010); *Biernacki v. Village of Ravena,* 245 A.D.2d 656, 664 (3d Dep't 1997); *see Gillette Shoe Company, Inc. v. City of New York,* 58 N.Y.2d 853, 856 (1983) (same for potable water system).  In a related context, the New York Court of Appeals has observed:

> To hold otherwise would be to subject municipalities to open-ended liability of enormous proportions and with no clear outer limits.  The imposition of such liability, in addition to posing a crushing financial burden, might well discourage municipalities from undertaking activities to promote the general welfare.  It could also impede municipal officials from allocating resources where they would most benefit the public, by making the prime concern the avoidance of tort liability rather than the promotion of the public welfare.  The courts should not take it upon themselves to, in effect, reorder municipal priorities.

*O'Connor v. City of New York,* 58 N.Y.2d 184, 191 (1983) (*citation omitted*).

Even for a failure-of-inspection negligence theory, the municipality must usually be shown to have disregarded a known or apparent dangerous or obstructed condition in a drainage system before it will incur liability.  *See e.g., Pet Products, Inc. v. City of Yonkers,* 290 A.D.2d 546, 547 (2d Dep't 2002); *Biernacki v. Village of*

22

*Ravena,* 245 A.D.2d 656, 664 (3d Dep't 1997); *but see Bertacchi v. City of New York*, 30 Misc.3d 567 (N.Y. Sup., Rich. Co. 2010) (municipality held immune from liability for exercising discretion not to inspect and maintain storm water drainage system.)  The common law duty of watchfulness does not require a municipality to address dangers or obstructions of which the municipality is not actually aware, or of which it would not be aware while being reasonably watchful.  *See e.g.*, *Dewitt Properties, Inc. v. City of New York,* 44 N.Y.2d 417, 423-25 (1978) (potable water system); *see Fireman's Fund Ins. Co. v. County of Nassau,* 66 A.D.3d 823, 824 (2d Dep't 2009).  For example,  "[e]vidence of flooding caused by the back flow of a sewer system, standing alone, is insufficient to maintain an action against a municipality to recover damages for injury to property."  *Linden Towers Co-op No. 4 v. City of New York,* 272 A.D.2d 587 (2d Dep't 2000); *see Tang v. Village of Geneseo,* 303 A.D. 2d 987 (4th Dep't 2003) (same for sanitary sewer back up).

**4.  Common Law Limit on Jamestown's Duty to the WCA Hospital.**  The New York Court of Appeals articulated Jamestown's common law duty of municipal watchfulness over its storm water drainage system long ago:

> The mere absence of [actual] notice does not necessarily absolve the city from the charge of negligence.  Its duty to keep its sewers in repair is not performed by waiting to be notified by citizens that they are out of repair, and repairing them only when the attention of the officials is called to the damage they have occasioned by having become dilapidated or obstructed; but it involves the exercise of a reasonable degree of watchfulness in ascertaining their condition, from time to time, and preventing them from becoming dilapidated or obstructed. Where the obstruction or dilapidation is an ordinary result of the use of the sewer,

> which ought to be anticipated and could be guarded against
> by occasional examination and cleansing, the omission to
> make such examinations and to keep the sewers clear, is a
> neglect of duty which renders the city liable.

*McCarthy v. City of Syracuse,* 46 N.Y. 194, 197-98 (1871).  *McCarthy* remains an

accurate general statement of New York municipal negligence law.  *See*  1B Hon.

Leon D. Lazer, et al., *New York Pattern Jury Instructions – Civil* § 2:225 (3rd ed.

2012) (pattern instruction for municipal subsurface structures); *see e.g., Holmes v.*

*Incorporated Village of Piermont,* 54 A.D.3d 809 (2d Dep't 2008).  Accordingly, even

absent a prior notification requirement, no negligence cause of action to recover for

property damage may be maintained against Jamestown for the allegedly

dangerous or obstructed condition of the Camp Street culvert unless Jamestown

was aware, or constructively aware, that the culvert was dangerous or obstructed a

reasonable period of time before the culvert clogged on August 9, 2009.  *McCarthy,*

*supra.*

        The R&R recommended summary judgment be granted to Jamestown on the

ground that plaintiff AIC lacks evidence that Jamestown was actually aware of a

problem with the Camp Street culvert.  As explained above, actual knowledge was

unnecessary if Jamestown had constructive knowledge as a result of past

obstructions or of conditions creating an unreasonable risk that the Camp Street

culvert would become obstructed.  *McCarthy v. City of Syracuse,* 46 N.Y. 194

(1871).  Plaintiff objects to the R&R on the ground that the R&R applied an incorrect

legal standard by requiring evidence of actual knowledge of a problem with the

24

Camp Street culvert to find a duty of care running to the WCA Hospital.  Plaintiff

contends, nevertheless, that it has proffered enough evidence of actual knowledge

to raise a material question of fact whether Jamestown failed adequately to inspect

and maintain the culvert.

      Plaintiff AIC contends that Jamestown's letter to the DEC stating that the

Camp Street culvert  "periodically traps organic debris . . . causing a water backup"

is legally sufficient support for a jury finding that Jamestown had the knowledge

required to trigger the duty of care.  Plaintiff contends it would be reasonable for a

jury to infer from that statement, and all of the attendant circumstances, that

Jamestown was actually aware storm water and runoff were backing up behind

trapped organic debris at the culvert before the August 9, 2009 clog and flooding.

The Court disagrees.

      Jamestown's letter to the DEC about the Camp Street culvert was dated two

months after the August 9, 2009 clog and flooding of the WCA Hospital when

Jamestown was seeking authorization from the DEC to take post-clogging remedial

measures at the mouth of the culvert.  All of the testimony, documentary evidence,

and circumstantial evidence plaintiff AIC has marshaled during pretrial discovery

tend to show that Jamestown did not have actual knowledge of a potential clogging

problem at the culvert.

      The uncontroverted direct evidence about Jamestown's statement in the DEC

letter that the culvert had  "periodically trap[ped] organic debris . . . causing a water

backup"  is that the statement does not refer to any instance of trapped debris

known to Jamestown at any time before the August 9, 2009 clog and flooding.

Under these circumstances, it would be speculative and incorrect for a jury to infer

that Jamestown had actual knowledge of past obstructions or of a tendency of the

Camp Street culvert to become obstructed based upon Jamestown's October 9,

2009 letter to the DEC.  Plaintiff AIC failed to find evidence during pre-trial discovery

to call into doubt the uncontroverted evidence that Jamestown's statement in the

DEC letter does not refer to any instance of trapped debris at any time before the

August 9, 2009 clog and flooding.  Plaintiff lacks sufficient evidence even for a

threshold showing of a legally recognized duty of care.

Plaintiff AIC has not specifically objected to the R&R by contending it has

sufficient evidence that Jamestown had constructive knowledge of circumstances

giving rise to an unreasonable risk of clogging in or at the Camp Street culvert to

trigger Jamestown's duty of care to the WCA Hospital.[4]  Instead, plaintiff argues —

without admissible expert opinion or other municipal standard of care evidence to

support the argument — that Jamestown's practices for maintaining its storm water

drainage system, and the Camp Street culvert, were insufficient because inspection

---

[4]  Plaintiff AIC stresses evidence that the WCA Hospital was vulnerable to flooding as if that evidence alone triggers Jamestown's duty of care to the hospital.  Plaintiff overlooks that "foreseeability of harm does not define duty."  *532 Madison Ave. Gourmet Foods, Inc., v. Finlandia Center, Inc.,* 96 N.Y. 280, 289 (2001).  Plaintiff suggested to the Magistrate Judge below that the hospital had a "special relationship" with Jamestown because of the known risks of flooding to the hospital and that these risks and the "special" relationship were sufficient to trigger Jamestown's duty of care with respect to the Camp Street culvert, but plaintiff established no legally recognized special relationship and has given up the suggestion in its objections to the R&R.  *See Davis v. County of Onondaga*, 31 A.D.2d 1156, 1157-58 (4th Dep't 2006); *see also, O'Connor v. City of New York,* 58 N.Y.2d 184, 188-92 (1983) (elements of special relationship).

and cleaning were not scheduled strictly enough, and with enough paperwork, to have prevented the August 9, 2009 clog and flooding at the hospital, as if such speculation could give rise to a triable issue of material fact whether Jamestown owed the WCA Hospital a duty of care with respect to the Camp Street culvert.

As stated above, evidence of the "flooding caused by the back flow of a sewer system, standing alone, is insufficient to maintain an action against a municipality to recover damages for injury to property." *Linden Towers Co-op No. 4 v. City of New York,* 272 A.D.2d 587 (2d Dep't 2000). "Without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *Lauer v. City of New York,* 95 N.Y.2d 95, 100 (2000). Because plaintiff has no proof Jamestown had actual or constructive knowledge of a problem with the Camp Street culvert, it lacks evidence sufficient to a threshold showing of Jamestown's duty of care with respect to the culvert running from Jamestown to the WCA Hospital.

**CONCLUSION**

For all of the foregoing reasons, the Court adopts the recommendation of

Magistrate Judge Hugh B. Scott to grant summary judgment pursuant to Rule 56 of

the Federal Rules of Civil Procedure to defendant City of Jamestown and against

plaintiff The American Insurance Company.  The Court has deemed plaintiff AIC's

objections submitted without oral argument pursuant to Rule 78(b) of the Federal

Rules Civil Procedure.  The Court carefully considered all of the arguments raised

by the parties and concluded that oral argument was unnecessary.  The Clerk shall

enter judgment for defendant The City of Jamestown.


SO ORDERED.

s/ Richard J. Arcara
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: October 22, 2012